**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Kenneth A. Hinton,<br><br>                Plaintiff,<br><br>     v.<br><br>Corrections Corporation of America,<br><br>                Defendant. | Civil Action No. NO. 1:08-CV-00312-RWR |

## MOTION TO DISMISS OF DEFENDANT, CORRECTIONS CORPORATION OF AMERICA

Defendant, Corrections Corporation of America, through counsel, files this Motion to Dismiss Plaintiff's Complaint pursuant to FED.R.CIV.P. 12(b)(6) because Plaintiff failed to exhaust all administrative remedies available to him pursuant to 42 U.S.C. § 1997(e).  This Motion is supported by the following Memorandum of Points and Authorities, Affidavit of Joyce Allen, and pleadings on file with this Court.

### STATEMENT OF POINTS AND AUTHORITIES

**I.**     **FACTUAL BACKGROUND**

Plaintiff filed a Complaint on February 25, 2008 complaining that he was subjected to cruel and unusual punishment in violation of his Eighth Amendment rights at the D.C. Correctional Treatment Facility.  Specifically, Plaintiff alleged that from May 28, 2007 until June 9, 2007, he was housed in a unit within CTF without being provided "adequate and sufficient cleaning supplies, disinfectants or sanitation solvents."  As a result, Plaintiff alleges that he was "infected and exposed to the 'super bug bacteria' MRSA."  Plaintiff also alleges that

1897645.1

he had to wait a week to receive treatment to "remove the MRSA" due to the CTF Medical

Health Unit not having the required equipment available.[1]  Plaintiff further alleges that he was

"unknowingly and unreasonably exposed to unsanitary, unsafe and unreasonable conditions of

inadequate sanitation," by which he contacted the MRSA bacteria.  He also alleges that he was

exposed to "vermin, fruit flies, leaches in the showers and other airborne pathogens and bacteria

which further attributed [sic] . . . ongoing complications as a result of delayed treatment."

Although Plaintiff did file a total of six grievances for the calendar year 2007 at CTF,

none of the grievances addressed the issues raised in Plaintiff's Complaint.  Because Plaintiff

failed to comply with the CCA/CTF grievance policy, he has failed to properly exhaust the

administrative remedies available to him under the Prison Litigation Reform Act ("PLRA").

Accordingly, Plaintiff's Complaint must be dismissed.

## II.    PLAINTIFF FAILED TO EXHAUST THE ADMINISTRATIVE REMEDIES AVAILABLE TO HIM AS REQUIRED BY 42 U.S.C § 1997(E)(A).

### A.    Plaintiff Must Properly Exhaust All Available Administrative Remedies Prior to Bringing Suit Regarding Any Claim.

The PLRA requires inmates to properly exhaust all administrative remedies before

bringing a lawsuit.  Pursuant 42 U.S.C. §1997(e)(a):

> No action shall be brought with respect to prison conditions under § 1979 of the Revised Statutes of the United States (42 U.S.C § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility, until such administrative remedies as are available are exhausted.

The exhaustion requirement promotes three important interests:  "(1) deference to

Congress's decision that independent administrative tribunals, not courts, shall serve as the initial

forum for dispute resolution; (2) respect for administrative autonomy by minimizing unnecessary

---

[1] CCA is not responsible for medical treatment within CTF.

judicial intervention; and, (3) judicial economy by resolving complaints or setting forth findings of fact.[2]

These goals, "can only be realized if the prison is given a fair opportunity to consider the grievance.  The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules."[3]

Inmates are required to exhaust all administrative remedies before filing civil litigation.[4] The exhaustion requirement applies to all inmates suits about prison life and "are designed to . . . create an incentive for a [inmates] to do what they otherwise would prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims by requiring proper exhaustion of administrative remedies, which means using all steps that the agency holds out, and doing so properly."[5]  In addition, a prisoner must exhaust all of his administrative remedies, not just some.[6]  Exhaustion is mandatory under the PLRA and unexhausted claims cannot be brought in Court.[7]

B.     **Plaintiff Failed to Properly Exhaust His Administrative Remedies Provided by Defendants.**

Plaintiff is and was a "prisoner confined in a jail, prison, or other correctional facility" for

---

[2] *Terrell v. Brewer*, 935 F.2d 1015, 1019 (9th Cir. 1991).

[3] *Woodford v. Ngo*, 126 S.Ct. 2378, 2388 (2006).

[4] *Porter v. Nussell,* 534 U.S. 516, 524 (2002); *Barnard v. District of Columbia*, 223 F.Supp.2d 211, 212-213 (D.D.C. 2002) ("[A] prisoner may file a civil action relating to conditions of confinement only after he has exhausted the prison's administrative remedies."

[5] *Woodford v. Ngo*, 126 S.Ct. at 2385.

[6] *See, e.g. Harper v. Jenkin,* 179 F.3d 1311, 1312 (11th Cir. 1999) (dismissing § 1983 claim because the inmate did not appeal the denial of the grievance, thus failing to give the State a full chance to hear the grievance); *Wright v. Morris*, 111 F.3d 414, 417 n.3 (6th Cir. 1997) (finding inmate failed to exhaust when the inmate filed a grievance but "did not appeal the denial of that complaint to the highest possible administrative level").

[7] *Jones v. Bock*, 127 S.Ct. 910, 918-919 (2006).

all purposes under 42 U.S.C. §1997 at the time he filed his Complaint.  Plaintiff was aware of the

CTF inmate grievance policy, having filed six grievances at the CTF.  The CTF procedures state

that in order for an inmate to exhaust the administrative remedies, he must follow the facility

grievance procedures and carry the grievance through to its finish.  The CTF grievance policy at

the time of Plaintiff's incarceration contains the following five steps:

> (1) Within seven days of becoming aware of the grieveable
> incident, the inmate is to attempt informal resolution, and a staff
> member responds to the informal resolution request.  (2) If the
> inmate is not satisfied with the result, he may, within five days,
> send a formal grievance to the grievance officer, who responds to
> the grievance.  (3) If the inmate finds the grievance officer's
> response unsatisfactory, he can appeal to the Warden or the
> Warden's designee within five days of receipt of the grievance
> officer's decision and will receive a response from the Warden or
> Warden's designee.  (4) If the inmate finds the Warden's or
> Warden's designee's response unsatisfactory, he may appeal to the
> contract monitor and will receive a response.  (5) If the inmate
> finds the contract monitor's response unsatisfactory, he can appeal
> to the Director of the DC Department of Corrections, who will
> issue a final response.[8]

**1.     Plaintiff Failed to Exhaust Administrative Remedies With Regard to
the Allegations in His Complaint.**

Plaintiff's Complaint raises two claims.  As a result, Plaintiff is required to exhaust all

administrative remedies for each claim prior to bringing suit.  Otherwise, the court should

dismiss those claims for which Plaintiff failed to exhaust administrative remedies.[9]  In this case,

Plaintiff only submitted grievances complaining of a delay in receiving freshly washed linens,

and four separate complaints regarding a delay in receiving prescription eye glasses.  *See* Exhibit

1, paragraph 13 through 18.  At no time did Plaintiff ever submit any grievance regarding the

---

[8] *See* Exhibit 1, Affidavit of Joyce Allen, paragraph 8.

[9] *Jones*, 127 S.Ct. at 924 ("If a complaint contains both good and bad claims, the court proceeds with the good and
the bad claims are dismissed.") (Citation omitted.)

1897645.1

allegations in the Complaint, specifically that he was exposed to "unsanitary, unsafe and unreasonable conditions of inadequate sanitation, cleaning and disinfectant of the CCA/CTF 2B housing unit; or that he was not provided with sanitation supplies, disinfectants or cleaning solvents, or that he was exposed to vermin, fruit flies, leaches in the showers or other airborne pathogens and bacteria which complicated his alleged MRSA infection. He also did not file any grievances alleging any delay or inadequate treatment for his MRSA infection.[10]

Since Plaintiff did not even file grievances on any of the allegations within his Complaint, he failed to properly exhaust all administrative remedies available to him. By failing to submit timely grievances regarding these claims, they should be dismissed.

### C. Dismissal With Prejudice is Appropriate for Failure to Exhaust Administrative Remedies.

Unlike stating a claim upon which relief can be granted, Plaintiff cannot now turn back the clock to properly comply with the policies and procedures which govern the proper exhaustion of these administrative remedies. As a result, dismissal with prejudice is warranted.[11] Defendants therefore request that the Plaintiff's Complaint be dismissed with prejudice.

## III. CONCLUSION

Plaintiff has failed to provide the court with any evidence that he complied with the PLRA exhaustion requirements. In addition, Defendants affirmatively have demonstrated that Plaintiff failed to properly exhaust available administrative remedies with regard to his allegations of unconstitutional conditions of confinement and inadequate medical treatment. As a result, Plaintiff's Complaint must be dismissed with prejudice.

---

[10] *See* Exhibit 1, paragraph 19.

[11] *Shane v. Fauver*, 213 F.3d 113, 117 (3rd Cir. 2000).

Dated: March 31, 2008

Respectfully submitted,

JONES, SKELTON & HOCHULI, P.L.C.
2901 North Central Avenue, Suite 800
Phoenix, Arizona  85012
Tel:     (602) 263-1700


By: /s/ Daniel P. Struck
     Daniel P. Struck, Bar No. CO0037
     Attorneys for Defendant Corrections
     Corporation of America


ORIGINAL of the foregoing filed
ELECTRONICALLY this 31st day
of March, 2008 .

COPY of the foregoing mailed
this 31st day of March, 2008, to:

Kenneth A. Hinton
FCC Petersburg-Medium
Post Office Box 90043
Petersburg, Virginia 23804
Pro per

Mariana D. Bravo, Esq.
CARR MALONEY, P.C.
1615 L Street, NW, Suite 500
Washington, DC 20036
Co-counsel for Defendant
Corrections Corporation of
America

/s/  Lynda Carpenter-Paulson

1897645.1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Kenneth A. Hinton

        Plaintiff,

    v.

Corrections Corporation of America

        Defendant.

Civil Action No. 1:08-CV-312-RWR

## AFFIDAVIT OF JOYCE ALLEN

I, JOYCE ALLEN, being duly sworn according to law, upon my oath, depose and say:

    1.    I have been employed by Corrections Corporation of American (hereinafter "CCA") since October 2000. I currently am the Facility Grievance Officer at the Correctional Treatment Facility ("CTF") operated by Corrections Corporation of America in Washington, D.C.

    2.    I have reviewed the allegations contained in Plaintiff's Complaint.

    3.    I am over the age of 18 and have personal knowledge that the matters in this Affidavit are true and accurate, and submit this Affidavit in support of Defendant Corrections Corporation of America's Motion to Dismiss Plaintiff's Complaint or, in the Alternative, for Summary Judgment.

    4.    As Facility Grievance Officer, I am familiar with the CCA grievance policies and procedures regarding the available administrative remedies for inmates and detainees. My responsibilities include overall coordination of the grievance procedure at CTF, assigning a number to each grievance, coordinating the investigation of grievances

1896682.1

relating to CCA, completing the Grievance Officer's Report utilizing Form 14-5A, and maintaining all grievance records and documents, including the permanent grievance log.

5.     With respect to grievances relating to medical and culinary services, which are provided by third parties under contract to the D.C. Department of Corrections other than CCA, I receive the grievances, assign numbers to them, list them in the appropriate medical or culinary grievance log and forward them to the appropriate party for resolution.

6.     The inmate grievance procedure contained in CCA Policy 14-5 (attached hereto as Attachment A) was in effect at the time of Kenneth Hinton's incarceration at CTF.

7.     Upon an inmate's arrival to the facility, CCA/CTF provides an Inmate Handbook, which contains a summary of the facility grievance policies and procedures. Additionally, inmates have access to the complete grievance policy at each housing unit, the CTF Law Library or through facility staff.

8.     In order for an inmate or detainee to exhaust his administrative remedies, he should follow the facility grievance procedures and carry the grievance through to its finish. Prior to pursuing the grievance process, inmates and detainees are encouraged to first submit an Inmate Request Slip or speak with any staff member concerning the issue prior to submitting an Informal Resolution Form. If the complainant is dissatisfied with that the result, only then may the grievance process be initiated. At CTF, the grievance resolution process contains five steps:

a.     Inmates must initially submit the Informal Resolution Form to any staff member or Facility Grievance mailbox, within seven (7) days of the alleged incident.

The time for filing begins from the date the problem or incident became known to the inmate or resident. (Step One).

        b.    If the inmate is dissatisfied with the outcome of the informal resolution, an inmate may submit a formal grievance Inmates must initially send grievances, on the CCA Inmate/Resident Grievance Form, to the Grievance Officer within five (5) days of receipt of a response to their Informal Resolution request. (Step Two).

        c.    If the inmate finds the response unsatisfactory, he may appeal to the Warden within five (5) days of receipt of the Facility Grievance Officer's decision by completing the Request for Warden/Administrator Review portion of the Grievance Form. (Step Three). If the grievance appeal relates to an medical or culinary issue, it is not responded by the Warden, but is routed to the Contract Monitor for disposition.

        d.    If the inmate is unsatisfied with the Warden's response, he may appeal to the District of Columbia Department of Corrections' Contract Monitor within five (5) days of receipt of the Warden's response.(Step Four).

        e.    The inmate may then appeal the Contract Monitor's determination directly to the Director of the District of Columbia Department of Corrections within five (5) days of receipt of the Contract Monitor's decision (Step Five).

        9.    This five step grievance policy was approved at CTF in March 2007. However, during the implementation period, which includes the period when Inmate Hinton was held at CTF, inmates were only permitted to bypass Step One, the Informal Resolution, if their formal grievance was filed within seven (7) days of when the problem became known to the inmate or resident.

-3-

10.     If an inmate fails to follow this procedure or omits any part of it, he has not exhausted the administrative remedies available. If an inmate or detainee fails to cooperate with the investigation process, he has failed to carry the grievance through to its finish and thus has failed to exhaust the administrative remedies available.

11.     Additionally, the Grievance Policy includes procedures for inmates/residents to file Emergency Grievances. Grievances may be considered Emergency Grievances if the subject matter of the grievance is such that compliance with the regular time guidelines would subject the grievant to risk of personal injury. If the grievant asks that the grievance be considered an emergency and details the basis for needing an immediate response, the Facility Grievance Officer, will, within 24 hours review the grievance to determine if an emergency exists. If an emergency exists, the Facility Grievance Officer will take initial action to resolve the grievance within twenty-four (24) hours of receipt. After initial action has been taken and within seventy-two (72) hours of receipt of the emergency grievance, the Facility Grievance Officer will prepare and issue a written decision to the Grievant.

12.     I have reviewed the grievance log for calendar year 2007 and identified a total of six grievances filed by Inmate Hinton. None of those grievances, however, address any of the issues raised in Plaintiff's Complaint.

13.     On May 7, 2007, Inmate Hinton submitted Grievance 07-718 complaining that during a six day period, between April 29th and May 4th, while a resident of the D1A housing unit, he did not receive a set of freshly washed linens. Inmate Hinton requested that he be provided with two washed sheets ASAP. Mr. Lewis informally resolved the grievance and arranged for laundry to be done. When I advised Inmate Hinton that this

- 4 -

issue had been resolved on May 16, 2007, Inmate Hinton refused to acknowledge receipt of my decision. A true copy of Grievance 07-718 is Attachment B hereto.

14. On May 14, 2007, Inmate Hinton submitted Medical Grievance 07-295 complaining that had not yet received prescription eyeglasses, despite being seen by the ophthalmologist at least six months prior. Inmate Hinton requested immediate delivery of prescribed eyeglasses. The grievance was sustained on May 18, 2006 by the Medical Grievance Officer and Inmate Hinton was scheduled for another appointment with the ophthalmologist to be fitted for prescription eyeglasses. Inmate Hinton did not appeal this decision. A true copy of Medical Grievance 07-295 is Attachment C hereto.

15. On May 21, 2007, Inmate Hinton submitted Medical Grievance 07-299 complaining again that he had not received his prescription eyeglasses. The Medical Grievance Officer, on May 25, 2007 reported that Inmate Hinton had been scheduled to be seen by the ophthalmologist to be refitted for eyeglasses and that the glasses would then take 4-6 weeks to be delivered. A true copy of Medical Grievance 07-299 is Attachment D hereto.

16. On June 25, 2007, Inmate Hinton submitted Medical Grievance 07-332 complaining for a third time that he still had not received his prescription eyeglasses. The Medical Grievance Officer, on June 28, 2007, reported that Inmate Hinton was seen by the ophthalmologist on June 4, 2007, and that the eyeglasses have been reordered. A true copy of Medical Grievance 07-332 is Attachment E hereto.

17. On July 12, 2007 Inmate Hinton submitted Medical Grievance 07-348 complaining that he had waited "well over four weeks" since seeing the ophthalmologist on June 4, 2007, and still has not received his prescription eyeglasses. The Medical Grievance

Officer, on July 17, 2007, reported that Inmate Hinton had been re-examined by the ophthalmologist on July 9, 2007 and that the glasses would be delivered in approximately 4-8 weeks. A true copy of Medical Grievance 07-348 is Attachment F hereto.

18.     On August 2, 2007, Inmate Hinton submitted Medical Grievance 07-350 complaining for a fifth time, that still had not received his prescription eyeglasses. The Medical Grievance Officer, on August 10, 2007, reported that Inmate Hinton signed a receipt of his eyeglasses on August 6, 2007. A true copy of Medical Grievance 07-350 is Attachment G hereto.

19.     There is no record that Inmate Hinton did, at any time, submit any grievance regarding his allegations in the Complaint, that beginning on or about May 25, 2007, he was exposed to "unsanitary, unsafe and unreasonable conditions of inadequate sanitation, cleaning and disinfectant of the CCA/CTF C2B housing unit;" he was not provided sanitation supplies, "disinfectants and cleaning solvents"; he was exposed to "vermin, fruit flies, [or] leaches in the showers and other air borne pathogens and bacteria" which complicated his MRSA infection; or, that he received delayed or inadequate treatment for his MRSA infection at CTF.

20.     I hereby attest that Inmate Hinton failed to properly exhaust the administrative remedies available to him for the allegations contained in his Complaint.

FURTHER AFFIANT SAYETH NAUGHT.

_Joyce Allen_
Joyce Allen

WASHINGTON                    )
                              ) ss.
DISTRICT OF COLUMBIA          )

SUBSCRIBED AND SWORN before me this 31st day of March , 2008, by Joyce Allen.

_Phoenix C Ishmon_
Notary Public

My Commission Expires:          PHOENIX C. ISHMON
                        NOTARY PUBLIC DISTRICT OF COLUMBIA
                        My Commission Expires July 31, 2011

- 7 -

**ATTACHMENT A**

| , 2007 **CCA** | POLICY TITLE | **Inmate/Resident Grievance Procedures** | | |
|---|---|---|---|---|
| **CORRECTIONS CORPORATION OF AMERICA** | CHAPTER | **14** | POLICY NUMBER | **14-5** | **Page 1 of 12** |

| | EFFECTIVE DATE | SUPERSEDES DATE |
|---|---|---|
| | **MARCH 14, 2007** | **DECEMBER 1, 2002** |

| *SIGNATURE ON FILE AT FACILITY SUPPORT CENTER* Richard P. Seiter Executive Vice President/Chief Corrections Officer | FACILITY NAME | **CORRECTIONAL TREATMENT FACILITY** |
|---|---|---|
| *SIGNATURE ON FILE AT FACILITY SUPPORT CENTER* G.A. Puryear, IV Executive Vice President/General Counsel | FACILITY EFFECTIVE DATE **JULY 9, 2007** | FACILITY SUPERSEDES DATE **APRIL 26, 2005** |

## 14-5.1 POLICY:

CCA will provide a means for all inmates/residents to address complaints regarding facility conditions, treatment, and policies and procedures. Many matters can and should be resolved directly and promptly between the inmate/resident and institutional staff.

All inmates/residents will have access to an informal resolution process to resolve their complaints. At any time the informal resolution process has not provided successful resolution of the complaint or in the event of an emergency grievance, inmates/residents may use the formal grievance process. All complaints should be assessed in a fair and impartial manner. Resolution in the best interest of the inmate/resident and the facility should be the primary goal.

## 14-5.2 AUTHORITY:

CCA Company Policy

## 14-5.3 DEFINITION:

<u>Emergency Grievance</u> – A grievance in which the potential for personal injury or irreparable harm exists.

<u>Grievance Officer</u> – Facility staff member responsible for tracking and management of the grievance process. This includes coordination of investigations and ensuring that resolution is reached.

<u>Grievance</u> – A written complaint concerning the facility conditions, treatment, policies, and/or procedures which is believed to personally affect the inmate/resident in a negative manner.

<u>Inmate/Resident</u> – Any adult or juvenile, male or female, housed in a CCA facility. Inmates/residents may also be referred to as detainees, prisoners, or offenders depending on classification and in accordance with facility management contracts.

<u>Reasonable Suspicion</u> – A suspicion which is based upon documentable, articulable facts which, together with the employee's knowledge and experience, lead him/her to believe that an unauthorized situation or violation of rules exists.

<u>Reprisal</u> – Any action or threat of action against any inmate/resident for the good faith use of or good faith participation in the informal resolution process or grievance procedure.

## 14-5.4 PROCEDURES:

### PROCEDURES INDEX

| SECTION | SUBJECT |
|---|---|
| A | Availability of Information |
| B | Training |
| C | Grievance Availability |
| D | Confidentiality |
| E | Protection from Reprisal |

| F | Grievable Matters |
|---|---|
| G | Non-Grievable Matters |
| H | Excessive Filing of Grievances |
| I | Grievance Extensions |
| J | Grievance Officer |
| K | Informal Resolutions |
| L | Emergency Grievances |
| M | Formal Grievances |
| N | Grievances Against Contracting Agency |
| O | Remedies |
| P | Appeal Process |
| Q | Transfers/Releases |
| R | Records |
| S | Reporting |
| T | ATF Section |

A.    AVAILABILITY OF INFORMATION

    1.    Employees

        A copy of this policy will be available to all employees.

    2.    Inmates/Residents

        a.    New inmates/residents will be informed of the informal resolution process and grievance procedures upon arrival.

        b.    A summary of procedures outlined in this policy will be included in the Inmate/Resident Handbook.

        c.    A copy of this policy will be available in the inmate/resident library. A copy will also be available for inmates/residents that do not have the opportunity to visit the library (i.e. segregated inmates/residents).

        **NOTE:** In the event an inmate/resident has difficulty in understanding the procedures outlined in this policy, employees must ensure that the information is effectively communicated on an individual basis. Auxiliary aids which are reasonable, effective, and appropriate to the needs of the inmate/resident shall be provided when simple written or oral communication is not effective.

B.    TRAINING

    All employees will receive training on this policy in pre-service and in-service training. Training will be documented in accordance with CCA Policy 4-2, Maintenance of Training Records.

C.    GRIEVANCE AVAILABILITY

    1.    Inmates/residents can invoke the grievance procedure regardless of disciplinary, classification, or other administrative decisions to which the inmate/resident may be subject.

    2.    An inmate/resident may not submit a grievance on behalf of another inmate/resident; however, assistance from a staff member or inmate/resident may be provided when necessary to communicate the problem on the grievance form.

D.    CONFIDENTIALITY

Proprietary Information – Not For Distribution – Copyrighted          Property of Corrections Corporation of America

Grievances are considered special correspondence. If a sealed envelope is labeled "Grievance" and addressed to the Grievance Officer, it will not be opened for inspection unless there is reasonable suspicion that the sealed envelope contains contraband. If reasonable suspicion exists and the Warden/Administrator or designee's approval has been obtained, the envelope may be opened and inspected for contraband only.

E.    PROTECTION FROM REPRISAL

Inmates/residents shall not be subject to retaliation, reprisal, harassment, or discipline for use or participation in the informal resolution process or grievance process. Any allegations of this nature will be thoroughly investigated by the Warden/Administrator and reviewed by the appropriate Divisional Managing Director, Facility Operations. The Divisional Managing Director, Facility Operations will notify the appropriate Vice President, Facility Operations of any allegations that are found to be credible.

F.    GRIEVABLE MATTERS

Inmates/residents may grieve the following matters through the grievance process:

1.    Violation of state and federal laws, regulations, or court decisions, to include but not limited to violations of the Americans with Disabilities Act, constitutional rights, etc.

2.    Application of rules, policies, and/or procedures towards inmates/residents over which CCA has control;

3.    Individual staff and inmate/resident actions, including any denial of access to the informal resolution or grievance processes;

4.    Reprisals against inmates/residents for utilizing the informal resolution or grievance processes; and

5.    Any other matter relating to the conditions of care and supervision within the authority of CCA.

**AT THIS FACILITY, ADDITIONAL CONTRACTUAL INFORMATION REGARDING GRIEVABLE MATTERS IS:**

| NONE |
| --- |

G.    NON-GRIEVABLE MATTERS

The following matters are not grievable by inmates/residents through these grievance procedures:

1.    State and Federal court decisions;

2.    State and Federal laws and regulations;

3.    Final decisions on grievances;

4.    Contracting agency (BOP, ICE, state department of corrections, etc.) policies, procedures, decisions, or matters (i.e., institutional transfers, parole and probation decisions, etc.);

**NOTE:** Contracting agency policies, procedures, decisions, or matters shall be grieved in accordance with the regulations of the applicable contracting agency.

5.    Disciplinary actions (all disciplinary action must be addressed in accordance with disciplinary procedures in place at the facility);

6.  Property issues (all property issues must be addressed in accordance with property procedures in place at the facility); and

7.  Classification status (all classification status must be addressed in accordance with classification procedures in place at the facility).

**AT THIS FACILITY, ADDITIONAL CONTRACTUAL INFORMATION REGARDING NON-GRIEVABLE MATTERS IS:**

> **NONE**

H.  EXCESSIVE FILING OF GRIEVANCES

If it is determined by the Warden/Administrator that an inmate/resident is deliberately abusing the grievance system through excessive filing of grievances and/or repeated refusal to follow procedures, the Warden/Administrator may suspend the filing of additional grievances until all pending grievances have been resolved. The Warden/Administrator will provide the inmate/resident with written documentation of the suspension.

**AT THIS FACILITY, ADDITIONAL CONTRACTUAL PROCEDURES REGARDING EXCESSIVE FILING OF GRIEVANCES ARE:**

> **NONE**

I.  GRIEVANCE EXTENSIONS

In certain instances it may be necessary to extend response deadlines to allow for a more complete investigation of the claim(s). Justification for the extension must be provided to the inmate/resident on the 14-5C Grievance Extension Notice. The time extension will be determined by the Warden/Administrator and will not exceed fifteen (15) calendar days.

J.  GRIEVANCE OFFICER

The Warden/Administrator will designate an individual(s) as Grievance Officer(s) who will coordinate the grievance process to include:

1.  Reviewing all formal grievances received to ensure all necessary information is included;

    **NOTE:** Grievances that are prematurely appealed to the Warden/Administrator or designee will be returned without review.

2.  Ensuring informal resolution has been attempted (excluding emergency grievances);

3.  Assigning a number to all formal grievances;

4.  Logging all grievances received;

5.  Forwarding formal grievances to the appropriate department head for response;

6.  Coordinating the timely investigation and response of formal grievances;

7.  Ensuring that, when a grievance decision specifies that an action is to be taken, a date is included for completing the action;

8.  Ensuring the inmate/resident receives a copy of the completed grievance and ensuring that the inmate/resident's signature is acquired at the time a response is provided;

9.  Ensuring all remedies/required actions are fulfilled by the imposed deadline; and

10.    Maintaining all grievance records and documents as outlined in 14-5.4.R.

**AT THIS FACILITY, THE POSITION DESIGNATED AS THE GRIEVANCE OFFICER IS:**

**GRIEVANCE COORDINATOR**

K.    INFORMAL RESOLUTIONS

With the exception of emergency grievances, inmates/residents are required to utilize the informal resolution process concerning questions, disputes, or complaints prior to the submission of a formal grievance. If an inmate/resident is not satisfied with the results of the informal resolution process, the inmate/resident may file a formal grievance.

1.    Filing

    a.    The 14-5A Informal Resolution form must be utilized to initiate the informal resolution process.

    b.    All 14-5A's related to medical care and treatment must be submitted to qualified health services staff through facility mail.

    c.    With the exception of grievances related to medical care and treatment, inmates/residents are required to submit 14-5A's through facility mail, or in person, to the appropriate unit staff. In the absence of unit management, the Warden/Administrator will designate a staff member to receive informal resolution forms.

    **AT THIS FACILITY INFORMAL RESOLUTION FORMS WILL BE SUBMITTED TO:**

    **THE GRIEVANCE COORDINATOR**

**NOTE:** Only qualified health services staff are authorized to provide responses to any questions, disputes, or complaints regarding medical care and treatment.

2.    Resolution

The staff member assigned to complete the informal resolution process will be responsible for:

    a.    Conducting an initial meeting with the inmate/resident to discuss the issue;

    b.    Meeting with all staff members involved with the issue;

    c.    Researching necessary information to determine if a remedy is possible;

    d.    Developing a response to present to the inmate/resident in an attempt to resolve the issue informally;

    e.    Ensuring the inmate/resident receives a copy of the completed 14-5A at the time the response is provided; and

    f.    Ensuring any remedies agreed upon are completed.

3.    Time Guidelines

The total time for the informal resolution process will be no more than fifteen (15) calendar days from the date the 14-5A was submitted through the date the response was presented to the inmate/resident, unless unusual circumstances are present. In

| Page 6 of 12 | MARCH 14, 2007 | 14-5 |
|---|---|---|

the event unusual circumstances (e.g. inability to contact a critical staff member for the investigation process, facility on lock down status, etc.) prohibit the ability to meet time guidelines, the assigned staff member will provide the inmate/resident with written documentation extending the response deadline.

    a.    The inmate/resident must submit the 14-5A within seven (7) calendar days of the alleged incident.

    b.    The time for filing begins from the date the problem or incident became known to the inmate/resident.

    c.    In the event the inmate/resident is not satisfied with the response, the inmate/resident will have five (5) calendar days to submit a formal grievance to the Grievance Officer.  In the event the inmate/resident pursues a formal grievance, the inmate/resident will be required to attach a copy of the 14-5A to the formal grievance form.

4.    Documentation

The original 14-5A will be maintained by the facility with a copy presented to the inmate/resident at the time the response was presented.

**AT THIS FACILITY, ORIGINAL 14-5A FORMS WILL BE MAINTAINED IN THE FOLLOWING LOCATION(S):**

| |
|---|
| **GRIEVANCE OFFICE** |

L.    EMERGENCY GRIEVANCES

If the subject matter of the grievance is such that compliance with the regular time guidelines would subject the inmate/resident to risk of personal injury, the inmate/resident may request that the grievance be considered an emergency grievance.  The emergency grievance must detail the basis for requiring an immediate response.  When the grievance is of an emergency nature, utilization of the informal resolution process is not required.

1.    Filing

    a.    The 14-5B Inmate/Resident Grievance form must be utilized to file an emergency grievance.  The inmate/resident will complete Page 1 of the 14-5B and place it in a sealed envelope marked "Emergency Grievance".  Sealed envelopes may be placed in the grievance mail box.  If a grievance mail box is not used, the emergency grievance will be forwarded to the Grievance Officer.

    **AT THIS FACILITY, THE PROCEDURE FOR FORWARDING THE GRIEVANCE TO THE GRIEVANCE OFFICER IS:**

| |
|---|
| **GRIEVANCES WILL BE PLACED IN THE GRIEVANCE BOX LOCATED ON EACH HOUSING UNIT** |

    b.    The Grievance Officer will check the grievance mail boxes daily, excluding weekends and holidays.  If a grievance mailbox is not used, grievances are to be forwarded daily, excluding weekends and holidays, to the Grievance Officer in accordance with the procedures listed above.

    c.    In the event it is necessary to file the emergency grievance on weekends or holidays, the sealed envelope will be given to the Shift Supervisor.  The Shift

Supervisor will ensure the Administrative Duty Officer is notified upon receipt of the emergency grievance.

2. Resolution

    a.    Emergency grievances received through the grievance mail box or alternative means, as identified above, will be reviewed by the Grievance Officer to determine if the grievance is of an emergency nature. If the grievance is determined to be of an emergency nature, the Grievance Officer will assign a number to the emergency grievance, document the grievance on the 14-5D Facility Grievance Log or via the current approved FSC/CCA electronic database, and immediately forward to an individual authorized to serve as Administrative Duty Officer below the rank of Warden/Administrator for a response.

    b.    Emergency grievances received on weekends and holidays will be reviewed by an individual authorized to serve as Administrative Duty Officer below the rank of Warden/Administrator to determine if the grievance is of an emergency nature and will respond accordingly.

    c.    The response must be documented on Page 2 of the 14-5B and submitted to the inmate/resident for signature at the time of presenting the response in person. The inmate/resident will receive a complete copy of the emergency grievance and any corresponding attachments at the time of presenting the response.

3. Time Guidelines

An individual authorized to serve as Administrative Duty Officer (below the rank of Warden/Administrator) shall take action to resolve the grievance within one (1) calendar day of receipt of the grievance and provide a written response to the inmate/resident.

4. Documentation

The individual authorized to respond to the emergency grievance will ensure that the Grievance Officer receives a copy of the emergency grievance and corresponding attachments to ensure that the emergency grievance is appropriately logged and filed.

M. FORMAL GRIEVANCES

1. Filing

    a.    The inmate/resident must file the grievance within five (5) calendar days of the response date listed on the 14-5A Informal Resolution form.

    b.    The 14-5B Inmate/Resident Grievance form must be utilized to file a formal grievance. The inmate/resident will complete Page 1 of the 14-5B and place it in a sealed envelope marked "Grievance". Sealed envelopes may be placed in the grievance mail box. If a grievance mail box is not used, the formal grievance will be forwarded to the Grievance Officer.

**AT THIS FACILITY, THE PROCEDURE FOR FORWARDING THE GRIEVANCE TO THE GRIEVANCE OFFICER IS:**

> **GRIEVANCES WILL BE PLACED IN THE GRIEVANCE BOX LOCATED ON EACH HOUSING UNIT**

| Page 8 of 12 | MARCH 14, 2007 | 14-5 |

    c.    The Grievance Officer will check the grievance mail boxes daily, excluding weekends and holidays. If a grievance mailbox is not used, grievances are to be forwarded daily, excluding weekends and holidays, to the Grievance Officer in accordance with the procedures listed above.

2.    Resolution

    a.    Formal grievances received through the grievance mail box or alternative means as identified above will be reviewed by the Grievance Officer to ensure the formal grievance is correctly submitted and required documentation attached.

    b.    The Grievance Officer will assign a number to the formal grievance, document the grievance on the 14-5D Facility Grievance Log or via the current approved FSC/CCA electronic database and forward the formal grievance to the appropriate staff member for a response.

    c.    Formal grievance resolution should be determined by the appropriate department head in relation to the formal grievance unless the grievance pertain to the department head, in which case a different department head will be designated. For example, grievances related to medical care and treatment would be forwarded to the Health Services Administrator, grievances related to education would be forwarded to the principal, grievances related to classification would be forwarded to unit staff, etc.

    d.    Each formal grievance will be responded to by including a written explanation for approval/disapproval. The response must be documented on Page 2 of the 14-5B and given to the inmate/resident, in person, for signature. Responses may be given to the inmate/resident, in person, by the responder or the Grievance Officer. The inmate/resident will receive a complete copy of the formal grievance and any corresponding attachments at the time of presenting the response.

3.    Time Guidelines

    a.    Unless a time extension has been granted, the inmate/resident will receive a response to the formal grievance within fifteen (15) calendar days of submission.

    b.    The total time for the formal grievance process will be no more than fifty (50) days from filing to a final appeal decision, unless unusual circumstances are present.

4.    Documentation

The designated department head responding to the formal grievance will ensure that the Grievance Officer receives a copy of the formal grievance response and corresponding attachments to ensure that the formal grievance is appropriately logged and filed.

**5.    AT THIS FACILITY, ADDITIONAL CONTRACTUAL PROCEDURES ARE:**

| **NONE** |

N.    GRIEVANCES AGAINST CONTRACTING AGENCY

**AT THIS FACILITY, PROCEDURES FOR FILING A GRIEVANCE AGAINST THE CONTRACTING AGENCY ARE AS FOLLOWS:**

ALL GRIEVANCES AGAINST THE CONTRACTING AGENCY WILL BE FORWARDED TO THE CONTRACT MONITOR OR THE CONTRACTING AGENCY.

O.     REMEDIES

The informal resolution process and formal grievance process shall afford the inmate/resident the opportunity for meaningful remedy.  Remedies shall cover a broad range of reasonable and effective resolutions. Remedies may include the following:

1.     Change of procedures or practices appropriately related to the complaint or conditions;

2.     Correction of records; or

3.     Other remedies, as appropriate.

P.     APPEAL PROCESS

1.     Filing

If an inmate/resident is not satisfied with the decision of a formal or emergency grievance, the inmate/resident may complete the appeal section of the 14-5B and resubmit the grievance. Inmates/residents are entitled to appeal all adverse decisions, even those made on a purely procedural basis including but not limited to the expiration of a time limit.  The inmate/resident must file the appeal within five (5) calendar days of the response date listed on the 14-5B Inmate/Resident Grievance form.

2.     Resolution

a.     The Grievance Officer will forward all grievance appeals to the Warden/Administrator for review and a final response.

b.     Each appeal will be responded to by including a written explanation for approval/disapproval.  The response must be documented on Page 2 of the 14-5B and given to the inmate/resident, in person, for signature.  Responses may be given to the inmate/resident, in person, by the Warden/Administrator or the Grievance Officer.  The inmate/resident will receive a complete copy of the appeal response and any corresponding attachments at the time of presenting the response.

c.     The Warden/Administrator's decision is final unless otherwise specified in the facility management contract.

3.     Time Guidelines

Barring extraordinary circumstances, a grievance will be considered settled if the decision at any step is not appealed by the inmate/resident within the given time limit.

a.     Emergency Grievances

The inmate/resident will receive a response to the appeal within seven (7) calendar days of submission.

b.     Formal Grievances

The inmate/resident will receive a response to the appeal within fifteen (15) calendar days of submission.

4.  Documentation

If the response is presented to the inmate/resident by the Warden/Administrator, the Warden/Administrator will ensure that the Grievance Officer receives a copy of the appeal response and corresponding attachments to ensure the appeal is appropriately logged and maintained on file.

5.  **AT THIS FACILITY, ADDITIONAL CONTRACTUAL APPEAL PROCEDURES ARE AS FOLLOWS:**

> 1.  **IF THE INMATE IS NOT SATISFIED WITH THE WARDEN'S RESPONSE, THE INMATE MAY APPEAL TO THE CONTRACT MONITOR WITHIN FIVE (5) DAYS OF RECEIPT OF THE WARDEN'S DECISION.**
>
> 2.  **IF THE INMATE IS NOT SATISFIED WITH THE CONTRACT MONITOR'S REAPONSE, THE INMATE MAY APPEAL TO THE DIRECTOR OF THE DC DEPARTMENT OF CORRECTIONS WITHIN FIVE (5) DAYS OF RECEIPT OF THE CONTRACT MONITOR'S DECISION.**
>
> 3.  **ALL APPEALS MUST HAVE THE ORIGINAL GRIEVANCE AND RESPONSE ATTACHED WHEN FILED.**
>
> 4.  **THE GRIEVANCE OFFICER WILL LOG ALL APPEALS AND FORWARD THE APPEAL, ALONG WITH ANY SUPPORTING DOCUMENTATION, TO THE APPROPRIATE LEVEL OF APPEAL OFFICE IN ACCORDANCE WITH DEPARTMENT ORDER 4030.1D.**

Q.  TRANSFERS/RELEASES

If a grievance is submitted for review and the inmate/resident is transferred or released from custody, efforts to resolve the grievance will normally continue.  It is the inmate/resident's responsibility to notify the Grievance Officer of the pending transfer or release and to provide a forwarding address and any other pertinent information.

R.  RECORDS

1.  All grievances will be systematically maintained by the Grievance Officer.  All grievances (formal and emergency) and corresponding attachments will indicate the assigned grievance number and be date stamped upon receipt.

2.  The Grievance Officer will maintain a log of all grievances received utilizing the 14-5D Facility Grievance Log or via the current approved FSC/CCA electronic database.  The log shall include the following information:

    a.  Grievance number;

    b.  Date received;

    c.  Inmate/resident name;

    d.  Inmate/resident number;

    e.  Informal attempt;

    f.  Grievance category;

    g.  Disposition date;

        h.     Disposition code;

        i.      Date appeal received, if applicable;

        j       Appeal disposition date; if applicable; and

        k.     Appeal disposition code, if applicable.

3.     All grievance documentation will be maintained in accordance with CCA Policy 1-15, Retention of Records.

4.     Copies of grievances shall **not** be placed in an inmate/resident's file, unless it is a contractual requirement to do so.

**AT THIS FACILITY, CONTRACTUAL REQUIREMENTS REGARDING LOCATION OF GRIEVANCE COPIES ARE:**

> **A COPY OF THE GRIEVANCE LOG WILL BE FORWARDED TO THE CONTRACT MONITOR BY THE 5TH OF EACH MONTH.**

5.     Records regarding the participation of an individual in the informal resolution process or grievance procedure will not be available to other inmates/residents.

6.     With the exception of employees involved in the grievance process or clerical processing, records regarding the participation of an individual in the informal resolution process or grievance procedures will not be available for review.

7.     Employees participating in the disposition of an informal resolution process or grievance procedure shall have access to the essential records necessary to respond appropriately.

S.     REPORTING

The 14-5E Grievance Report will be completed by the fifteenth day of each month and forwarded to the FSC Quality Assurance Department, unless a current approved FSC/CCA electronic database has been established.

T.     **AT THIS FACILITY, ADDITIONAL CONTRACTUAL PROCEDURES ARE:**

> **NONE**


**14-5.5  REVIEW:**

This policy will be reviewed by the Chief Corrections Officer or designee on an annual basis.

**14-5.6  APPLICABILITY:**

All CCA Facilities (Provided contractual requirements do not mandate otherwise)

**14-5.7  APPENDICES:**

None

**14-5.8  ATTACHMENTS:**

14-5A    Informal Resolution

14-5B    Inmate/Resident Grievance

| Page 12 of 12 | MARCH 14, 2007 | 14-5 |

14-5C    Grievance Extension Notice

14-5D    Facility Grievance Log

14-5E    Quarterly Grievance Report

**AT THIS FACILITY, ADDITIONAL FORM REQUIREMENTS ARE:**



**14-5.9 REFERENCES:**

CCA Policy 1-15

CCA Policy 4-2

CCA Policy 15-1

CCA Policy 15-2

CCA Policy 14-6

CCA Policy 18-1

ACA Standards:

4-4284/4-ALDF-3E-11/3-JTS-3D-09

4-4394

4-4446/4-ALDF-5B-18

4-4492/4-ALDF-5B-09/3-JTS-5H-04

Proprietary Information – Not For Distribution – Copyrighted        Property of Corrections Corporation of America

**ATTACHMENT B**

## CCA INMATE/RESIDENT GRIEVANCE FORM
### FORMA DE AGRAVIO DE PRESIDIARIO/RESIDENTE DE CCA

**Name, *Nombre* (Print):** HINTON   KENNETH   A
Last Name   First   Middle Initial

**Number (*Numero*):** 261-079   **Housing Assignment (*Alojamiento de Asignacion*):** DIA   10

**INFORMAL RESOLUTION ATTEMPTED?** Yes ____✓____   No _____
*(LA RESOLUCION INFORMAL INTENTO?) Si*   No _____
**NAME OF STAFF CONTACTED (*NOMBRE DE PERSONAL SE PUSO EN COTACTO*)** Laundry Officer

### STATE GRIEVANCE (*EL AGRAVIO ESTATAL*) (Include documentation, witnesses, date of incident and any other information pertaining to the grievance subject. Attach additional pages if necessary.)

I have been At CCA/CTF on unit DIA since April 29, 2007 without the benefit of the CCA/CTF laundry Services providing laundry of my bed sheets. Pursuant to the CCA/CTF handbook, page 12 states units have washers and dryers for washing uniforms, undergarments etc. I request (2) laundry/washed sheets, ASAP.

### Requested Action (*Accion Solicitada*)

Be provided (2) washed sheets, ASAP so that I can maintain safe sanitation and proper laundry of sheets.

**Inmate/Resident's Signature:** [signature]   **Date Submitted:** 5/4/07
*(Firma de Presidiario/Residente)*   *(Fecha Presentada):*

### GRIEVANCE OFFICER'S REPORT (*EL INFORME DEL OFICIAL DE AGRAVIO*)

THE REASON INMATE HINTON LAUNDRY HAS NOT BEEN TAKEN CARE OF IS THE LAUNDRY OFFICER WAS OUT SICK. THE OFFICER IS BACK AND DIA LAUNDRY WILL BE DONE ON TIME. (LEWIS)
I WILL HAVE A NEW SCHEDULE SENT TO UNIT. (LEWIS)
INMATE HINTON WOULD LIKE TO APPEAL RESOLUTION.

### GRIEVANCE OFFICER'S DECISION (*LA DECISION DEL OFICIAL DE AGRAVIO*)

Resolved By Mr. Lewis.

**Grievance Officer's Signature:** J. Allen   **Date:** 5/16/07
**Inmate/Resident's Signature (upon receipt):** X REFUSED TO SIGN   **Date:** 5/16/07
*Firma de Presidiario/Residente (sobre recibo)*   *Fecha:*
**APPEAL (*PETICION*):**   Yes *Si* ✓   No _____
**STATE REASON (S) FOR APPEAL (*RAZONESTATAL DE PETICIO*):** _____

### WARDEN/ADMINISTRATOR'S RESPONSE (*RESPUETA DE GUARDIAN/ADMINISTRADOR*)

Appeal denied. Issue resolved.

**Warden/Administrator's Signature:** [signature]   **Date:** 5/21/07
**Inmate/Resident's Signature (upon receipt):** X Refused to sign   **Date:** 5/21/07
*Firma de Presidiario/Residente (sobre recibo)*   **Fecha:** 5/21/07

WITNESS: c/o Shari Hamett

Revised 02/01/02

**ATTACHMENT C**

## CCA INMATE/RESIDENT GRIEVANCE FORM
### FORMA DE AGRAVIO DE PRESIDIARIO/RESIDENTE DE CCA

Name, *Nombre* (Print): HINTON          KENNETH          A.
_____
Last Name          First          Middle Initial

Number (*Numero*): 261-079 _____ Housing Assignment (*Alojamiento de Asignacion*): D19 / cell 3

INFORMAL RESOLUTION ATTEMPTED?  Yes ___YES___        No _____
(*LA RESOLUCION INFORMAL INTENTO?*) *Si* _____        No _____
NAME OF STAFF CONTACTED (*NOMBRE DE PERSONAL SE PUSO EN COTACTO*)  Ms Jenkins        ✓

### STATE GRIEVANCE (*EL AGRAVIO ESTATAL*) (Include documentation, witnesses, date of incident and any other information pertaining to the grievance subject. Attach additional pages if necessary)

Back in October and November of 2006 my eyes were examined by the CCA/CTF ophthalmologist contracted to provide eye examinations to inmates at CCA/CTF. The ophthalmologist determined that I needed prescription eyeglasses and I was fitted for eyeglasses to be delivered to me at CCA/CTF. As of 5/14/07 I have not received my eyeglasses, well beyond 6 months since I was examined by the ophthalmologist.

### Requested Action (*Accion Solicitada*)

Immediate and prompt delivery of the prescribed eyeglasses for which was recommended for me to receive.

Inmate/Resident's Signature: _____    Date Submitted: 5/14/07

(*Firma de Presidiario/Residente*) _____    (*Fecha Presentada*):

### GRIEVANCE OFFICER'S REPORT (*EL INFORME DEL OFICIAL DE AGRAVIO*)

Pt was seen by Optho in Nov 06 - Medical record notes that he was fitted at that time. Director of Nursing was contacted to check incoming eyeglasses. She stated that since Nov/Dec timeframe - the organization contracted to provide glasses has changed because of our experience with delayed glasses.

### GRIEVANCE OFFICER'S DECISION (*LA DECISION DEL OFICIAL DE AGRAVIO*)

The patient has been scheduled within the month to see ophthalmology again to be Re-fitted.
Grievance officer's Signature: _____    Date: 5/18/07
Inmate/Resident's Signature (upon receipt): X Refuse to sign    Date: 5/18/07
*Firma de Presidiario/Residente (sobre recibo)*: _____    *Fecha*: _____

APPEAL (*PETICION*):    Yes *Si* _____    No _____
STATE REASON (S) FOR APPEAL (*RAZON ESTATAL DE PETICIO*): _____
_____
_____
_____

### WARDEN/ADMINISTRATOR'S RESPONSE (*RESPUETA DE GUARDUAN/ADMINISTRADOR*):
_____
_____
_____

Warden/Administrator's Signature: _____    Date: _____
Inmate/Resident's Signature (upon receipt): _____    Date: _____
*Firma de Presidiario/Residente (sobre recibo)* _____    *Fecha*: _____

Revised 02/01/02

CC: J. Rudasill, ESQ

**ATTACHMENT D**

Medical

Grievance No. 299

## CCA INMATE/RESIDENT GRIEVANCE FORM
### FORMA DE AGRAVIO DE PRESIDIARIO/RESIDENTE DE CCA

Name, *Nombre* (Print): **HINTON          KENNETH          A.**
                        Last Name        First             Middle Initial

Number (*Numero*): **261-079**    Housing Assignment (*Alojamiento de Asignacion*): **C2B/cell 24**

INFORMAL RESOLUTION ATTEMPTED?    Yes  ✓          No _____
(*LA RESOLUCION INFORMAL INTENTO?*) Si _____    No _____
NAME OF STAFF CONTACTED (*NOMBRE DE PERSONAL SE PUSO EN COTACTO*) Ms Jenkins, Mr Fulton
Mr. Caulfield

**STATE GRIEVANCE (*EL AGRAVIO ESTATAL*)** (Include documentation, witnesses, date of incident and any other information pertaining to the grievance subject. Attach additional pages if necessary).

Back in October and November of 2006 my eyes were examined by the opthalonologist who was contracted to provide such eye examine by CCA/CTF. It was determined and recommended that I receive prescription eyeglasses, for which I was also fitted for. As of today 5/20/07 I have not received delivery of my eyeglasses for which I now need.

**Requested Action (*Accion Solicitada*)**
Immediate and prompt delivery of the prescription eyeglasses for which was recommended for me to have.

Inmate/Resident's Signature: _K. Hinton_          Date Submitted: 5/20/07
(*Firma de Presidiario/Residente*)                     (*Fecha Presentada*):

**GRIEVANCE OFFICER'S REPORT (*EL INFORME DEL OFICIAL DE AGRAVIO*)**
This grievance was answered last week. Pt has an appt already scheduled with ophthalmology within a month's time to be refitted by ophtho. Ordered glasses then typically take 4-6 weeks to arrive from the manufacturer

**GRIEVANCE OFFICER'S DECISION (*LA DECISION DEL OFICIAL DE AGRAVIO*)**

Grievance Officer's Signature: _[signature]_          Date: 5-25-07
Inmate/Resident's Signature (upon receipt): Refuse to Sign          Date: _____
*Firma de Presidiario/Residente (sobre recibo)* Barber          Fecha: 5/25/07
APPEAL (*PETICION*):    Yes Si _____    No _____
STATE REASON (S) FOR APPEAL  (*RAZONESTATAL DE PETICIO*): _____

**WARDEN/ADMINISTRATOR'S RESPONSE (*RESPUETA DE GUARDUAN/ADMINISTRADOR*):**

Warden/Administrator's Signature: _____          Date: _____
Inmate/Resident's Signature (upon receipt): _____          Date: _____
*Firma de Presidiario/Residente (sobre recibo)* _____          Fecha: _____

Revised 02/01/02

CC: J. Rudasill, ESQ.

**ATTACHMENT E**

## CCA INMATE/RESIDENT GRIEVANCE FORM
### FORMA DE AGRAVIO DE PRESIDIARIO/RESIDENTE DE CCA

Name, *Nombre* (Print): HINTON          KENNETH          A
                        Last Name        First            Middle Initial

Number (*Numero*): 261-079   Housing Assignment (*Alojamiento de Asignacion*): C2B/cell 24

INFORMAL RESOLUTION ATTEMPTED?   Yes ✓             No _____
(*LA RESOLUCION INFORMAL INTENTO?*) *Si* _____          No ____ JUN 25 AM 10:55
NAME OF STAFF CONTACTED (*NOMBRE DE PERSONAL SE PUSO EN COTACTO*) _____

**STATE GRIEVANCE (*EL AGRAVIO ESTATAL*) (Include documentation, witnesses, date of incident and any other information pertaining to the grievance subject. Attach additional pages if necessary.)**

I Request the prompt delivery of the
eyeglasses prescribed to me pursuant to the
eye exam I Received in November 2006
for which I was Also fitted for such
eyeglasses. I NEED Those prescribed eyeglasses!
ASAP!

**Requested Action (*Accion Solicitada*)**

Inmate/Resident's Signature: _____   Date Submitted: 6/20/07
(*Firma de Presidiario/Residente*)              (*Fecha Presentada*):

**GRIEVANCE OFFICER'S REPORT (*EL INFORME DEL OFICIAL DE AGRAVIO*)**

The patient is requesting his prescribed
Eyeglasses. He says he was examed and fitted in
November 2006

**GRIEVANCE OFFICER'S DECISION (*LA DECISION DEL OFICIAL DE AGRAVIO*)**

Review of Patient medical record patient was seen by Dr. Boschulte 6/4/07
his Eyeglasses were reorded. This may take 3-4 weeks before they come in.

Grievance Officer's Signature: _____   Date: 6/28/07
Inmate/Resident's Signature (upon receipt): _____   Date: 7/11/07
*Firma de Presidiario/Residente (sobre recibo)*:          *Fecha*:
APPEAL (*PETICION*):   Yes *Si* ✓   No _____

STATE REASON (S) FOR APPEAL (*RAZONESTATAL DE PETICIO*):
As of 7/11/07 Patient has still not Received his prescribed eyeglasses
pursuant to the 11/15/06 eye examine or the 6/4/07 eye exam.
Patient request immediate delivery of prescribed eyeglasses. ASAP!

**WARDEN/ADMINISTRATOR'S RESPONSE (*RESPUETA DE GUARDUAN/ADMINISTRADOR*)**

Warden/Administrator's Signature: _____   Date: _____
Inmate/Resident's Signature (upon receipt): _____   Date: _____
*Firma de Presidiario/Residente (sobre recibo)* _____   *Fecha*: _____

Revised 02/01/02

**ATTACHMENT F**

Medical

## CCA INMATE/RESIDENT GRIEVANCE FORM
## FORMA DE AGRAVIO DE PRESIDIARIO/RESIDENTE DE CCA

Name, *Nombre* (Print): HINTON        KENNETH                    A
                      Last Name         First                    Middle Initial

Number (*Numero*): 261-079        Housing Assignment (*Alojamiento de Asignacion*): C2B/cell 24

                                                  JUL 12 PM 3:24

INFORMAL RESOLUTION ATTEMPTED?  Yes ✓        No _____
(*LA RESOLUCION INFORMAL INTENTO?*) Si _____   No _____
NAME OF STAFF CONTACTED (*NOMBRE DE PERSONAL SE PUSO EN COTACTO*) Dr. Bouchet

### STATE GRIEVANCE (*EL AGRAVIO ESTATAL*) (Include documentation, witnesses, date of incident and any other information pertaining to the grievance subject. Attach additional pages if necessary).

On 6/4/07 I was examined and fitted to receive prescription eyeglasses pursuant to the recommendation and medical order of the CCA/CTF ophthalmologist hired by CCA/CTF to provide such eye exam services. As of 7/12/07 I have not received my prescribed eyeglasses for which I need. I have been well over 4 weeks and I request delivery of my eyeglasses.

### Requested Action (*Accion Solicitada*)

Prompt delivery of prescribed eyeglasses per my 6/4/07 eye exam

Inmate/Resident's Signature: _____        Date Submitted: 7/12/07
(*Firma de Presidiario/Residente*) _____        (*Fecha Presentada*): _____

### GRIEVANCE OFFICER'S REPORT (*EL INFORME DEL OFICIAL DE AGRAVIO*)

Patient want his glasses that were ordered for him.

### GRIEVANCE OFFICER'S DECISION (*LA DECISION DEL OFICIAL DE AGRAVIO*)

Review of patients medical record. He saw a ophthalmology first on 6/4/07 Dr. Boschulte and was examined the second time he saw her was 7/9/07. It takes between 4→8 approx time for delivery of glasses. as told from

Grievance Officer's Signature: _____ Doshi Ahmad PA        Date: 7/17/07
Inmate/Resident's Signature (upon receipt): _____ K.H.        Date: 7/26/07
*Firma de Presidiario/Residente (sobre recibo)*: _____        *Fecha*: _____

APPEAL (*PETICION*):  Yes Si ✓ ___  No ___        Note: Referred to Contract Monitor 8/1/07
STATE REASON (S) FOR APPEAL (*RAZONESTATAL DE PETICIO*):

Inmate request the delivery of eyeglasses pursuant to his 11/15/06 eye exam that Dr. Barry also gave him per CCA/CTF policy for such medical services.

### WARDEN/ADMINISTRATOR'S RESPONSE (*RESPUETA DE GUARDUAN/ADMINISTRADOR*)

Appeal denied. You have not given sufficient time for delivery.

Warden/Administrator's Signature: _____        Date: 7/31/07
Inmate/Resident's Signature (upon receipt): _____        Date: _____
*Firma de Presidiario/Residente (sobre recibo)* _____        *Fecha*: _____

CC: J Rudasill, ESQ. Judge R.M. justina USDC

**ATTACHMENT G**

Form 14-5A - For Official Use Only

## CCA INMATE/RESIDENT GRIEVANCE FORM
### FORMA DE AGRAVIO DE PRESIDIARIO/RESIDENTE DE CCA

Name, *Nombre* (Print): HINTON     KENNETH     A

Last Name     First     Middle Initial

Number *(Numero)*: 261-079     Housing Assignment *(Alojamiento de Asignacion)*: C2B/cell 24

INFORMAL RESOLUTION ATTEMPTED? Yes On numerous occassions    No    AUG 2 PM 3:59

(LA RESOLUCION INFORMAL INTENTO?) Si   Since 11/15/06, 2/21/07, 5/24/07

NAME OF STAFF CONTACTED *(NOMBRE DE PERSONA SE PUSO EN CONTACTO)* 7/28/07, 7/23/07   J. Caulfield, W. Fulton D. Miller

### STATE GRIEVANCE *(EL AGRAVIO ESTATAL)* (Include documentation; witnesses, date of incident and any other information pertaining to the grievance subject. Attach additional pages if necessary).

On June 4, 2007 I received an eye exam and was Fitted for prescription eyeglasses as ordered and recommended by the CCA/CTF contract Ophthalmologists. Dr Barry and Dr Benedetti. I was informed I would receive my eyeglasses within 3 to 4 weeks by Dr. Barry per my 11/15/06 eye exam and within 2 to 4 weeks per my 6/4/07 eye exam. My informal complaint has not been adequately Addressed per CCA/CTF policy.

### Requested Action *(Accion Solicitada)*

Immediate delivery of my prescribed eyeglasses for which I was Fitted for on 11/15/06 and Again Fitted For on 6/4/07

Inmate/Resident's Signature: ___     Date Submitted: 7/30/07

*(Firma de Presidiario/Residente)*     *(Fecha Presentada)*:

### GRIEVANCE OFFICER'S REPORT *(EL INFORME DEL OFICIAL DE AGRAVIO)*

Patient wants his prescription eyeglasses delivered to him and he thinks his complaint has not been adequately addressed.

### GRIEVANCE OFFICER'S DECISION *(LA DECISION DEL OFICIAL DE AGRAVIO)*

Talking to head nurse, he signed for his eyeglasses on 8/6/07. If patient have eyesight problems he should resubmit a sick call slip so it maybe evaluated by practitioner need prescribed work

Grievance Officer's Signature: ___     Date: 8/10/07

Inmate/Resident's Signature (upon receipt): ___     Date: 8/16/07

*Firma de Presidiario/Residente (sobre recibo):*     Fecha:

APPEAL *(PETICION):* Yes *Si* ✓    No ___

STATE REASON (S) FOR APPEAL *(RAZONES TAL DE PETICION):*

Eyeglasses that inmate received is the wrong prescription per eye exam with Dr. Barry on 11/15/06

### WARDEN/ADMINISTRATOR'S RESPONSE *(RESPUETA DE GUARDIAN/ADMINISTRADOR):*

Warden/Administrator's Signature: ___     Date: ___

Inmate/Resident's Signature (upon receipt): ___     Date: ___

*Firma de Presidiario/Residente (sobre recibo)* ___     Fecha: ___

Revised 02/01/02

CC: J. Rudnall, Esq    Judge R.M. Urbina, USDC.